## JOHN V. HACKLEMAN

*v.*

## WILLIAM EDWARD HACKLEMAN *et al.*

*Opinion filed October 25, 1902.*

1. EQUITY—*when equity will grant relief the same as in case of parol partition.* If a father, by an arrangement in the nature of a family settlement, sets apart certain lands for each of his children as their separate property, and they go into possession of their respective tracts and so remain until after the father's death, equity will protect their rights, the same as if they had inherited the lands in common and afterwards made parol partition thereof, and may compel conveyances to be made between them.

2. APPEALS AND ERRORS—*when decree is prejudicial.* That a party has sold land before the filing of a bill for the partition of the same does not preclude him from asking a reversal of the decree awarding partition between the complainants and his grantee, where he holds a purchase money mortgage upon the entire tract, and the decree awards his grantee but an undivided half, thereby depriving him of his lien upon the other half.

APPEAL from the Circuit Court of Coles county; the Hon. FRANK K. DUNN, Judge, presiding.

JAMES W. & EDWARD C. CRAIG, for appellant.

NEAL & WILEY, and D. T. McINTYRE, (W. S. DOAN, of counsel,) for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

One Mary J. Connor died in the year 1889, leaving the appellant, her brother, and the appellees, her nephew and niece, the children of a deceased brother, her only heirs-at-law. On the 31st day of January, 1898, the appellant filed a bill in chancery in the Coles circuit court for a decree declaring a certain deed held by the said Mary J. Connor, purporting to convey to her the southeast quarter of section 27, town 14, north, range 8, east of the third principal meridian, in Coles county, (which land, the bill alleged, belonged to the appellant,) to be

but a mortgage, the conditions whereof had been fully complied with; that the east half of said tract had been re-conveyed to him by the said Mary J. Connor, and asking that the defendants be required to release and quit-claim to him, the appellant, such title to the west half of said tract as apparently rested in them, as heirs of the said Mary J. Connor. The appellees being residents of the State of Indiana, service was had upon them by publication, as non-residents, and they were defaulted, and upon evidence taken before the master in chancery a decree was entered granting the prayer of the bill, and in pursuance thereof the master in chancery executed a deed to the appellant for the said west half of the said tract of land.

On the 20th day of April, 1901, the appellees presented their petition, under section 19 of chapter 22 of the Revised Statutes, entitled "Chancery," to be heard touching the matter of such decree and for leave to answer the bill. The petition was granted and they filed an answer, in which they denied that the deed held by Mrs. Connor for the land was a mortgage, and also denied that the appellant ever had title to the land. They also, by leave of the court, filed a cross-bill, in which they alleged that the said Mrs. Connor was the owner of the said west half of the south-east quarter of section 27, aforesaid, at the time of her death, and that therefore it descended, under the statute, to the appellant and the appellees, as the only heirs-at-law of said Mary Connor, and praying that it be partitioned accordingly. The cross-bill was so amended on the hearing as that it alleged the title to the entire south-east quarter of said section 27 rested in one Michael Hackleman at the time of his death; that said Michael Hackleman died in 1869, and left him surviving his daughter, the said Mary J. Connor, deceased, the appellant, his son, and the appellees, children of one William E. Hackleman, Sr., a deceased son, and Rebecca, their mother, the widow of said deceased son; that said

Mary J. Connor died in 1889, leaving neither child, children nor descendants thereof, and her interest descended to the appellant, her brother, and to the appellees, her nephew and niece. The cross-bill prayed a decree partitioning the land among the said heirs of the said Michael Hackleman and said Mary J. Connor. Rebecca, the widow of said William E. Hackleman and mother of the appellees, was not made a party, for the reason she executed and delivered a quit-claim deed to the appellant.

The appellant, by leave of the court, filed an amended bill, in which he alleged that his father, Michael Hackleman, was a resident of the State of Indiana and had three children, namely, himself, said Mary J. Connor and said William E. Hackleman, deceased, the father of the appellees; that prior to the year 1865, and during the lifetime of said Mary J. Connor and said William E. Hackleman, said Michael, out of his lands then owned by him in the State of Indiana, gave certain parcels of the same to each of his said three children but retained title thereto in himself; that each of the said children entered into possession of their respective parcels of land and lived thereon; that appellant, in 1865, concluded to remove to Coles county, Illinois, and sold his home in Indiana, and with the money purchased the said south-east quarter of section 27 in controversy, taking the title thereto in the name of his father, under an agreement between them that the Illinois land should be considered the land of the appellant in the same manner as had the parcel of land in Indiana; that the appellant should live upon the land in Illinois, improve and cultivate the same and enjoy all the benefits therefrom, and that upon the death of his father it should be his property, and that the tract so set off to Mary Connor, sister of appellant, and the tract so set off to William E., brother of appellant, should belong to them; that his brother and sister well knew of this arrangement and were entirely satisfied with it, and received and enjoyed the lands so allotted to them by

their father; that in 1866 he built a dwelling house and made his home upon the west half of said tract, and resided there from thence until the year 1900,—a period of thirty-four years,—at which time he sold the said eighty-acre tract to one Charles Whipple, to whom he delivered the possession thereof; that no conveyance was made to him by his father. The amended bill re-asserted that the deed held by Mrs. Connor for the land was but a mortgage; that she re-conveyed the east half of the said tract to him in 1875, but that she died in 1889 without having executed a conveyance for the west half of said tract. The prayer was for a decree quieting the title and for conveyances of the apparent title held by the appellees. Upon a hearing the bill of the appellant was dismissed and the prayer of the cross-bill filed by the appellees was granted and decree of partition entered accordingly. This is an appeal to reverse the decree.

The evidence left no doubt but that the conveyance to Mrs. Connor was a mortgage, that the mortgage obligation had been fully discharged, and that Mrs. Connor, in the year 1875, re-conveyed the east half of the said south-east quarter of said section 27 to the said appellant. At about the same time the appellant conveyed the said east half of said tract to one Robert Angel, and the cross-bill filed by the appellees asked no relief as to that eighty-acre tract. No re-conveyance was, however, made by Mrs. Connor of the west half of said tract. Why she did not re-convey that tract also is not disclosed, but it was very clearly shown by the evidence she should have released all such interest, and equally clear that she made no claim of right to hold it. Upon these points there seems to be no contention.

We have very carefully read the evidence as preserved in the transcript of the record and considered the briefs and arguments of counsel, and are impressed with the conviction that the decree is inequitable and should be reversed and the prayer of the appellant's amended bill

granted. In the investigation of the evidence we have not considered the testimony of the appellant, the objection that he was not competent as to much to which he testified being well taken.

It appeared from the testimony of Rebecca Hackleman, (the mother of the appellees,) Philip Heebe, Louis Hackleman, (a son of appellant,) and Amanda Atchison, (a daughter of appellant,) that Michael Hackleman, who was the father of the appellant, of said Mary J. Connor and of W. E. Hackleman, (father of the appellees,) prior to the year 1865 placed each of his three children in possession of certain parcels of land owned by him in the State of Indiana, and gave all of them to understand that each of them was to own the lands so respectively given to them, though the father at that time retained the title to all the tracts. The record does not disclose when or how Mrs. Connor and the father of the appellees obtained title to the tracts of land so given to them, respectively, by their father, but no doubt is left that title did in some way pass from the father for their benefit. Mrs. Rebecca Hackleman, widow of the said William E. Hackleman and mother of appellees, testified that she knew that Michael Hackleman gave her husband and the appellant and Mrs. Connor each a farm in Indiana; that after her husband's death she bought the farm which was so set apart to Mrs. Connor and paid Mrs. Connor $4000 for it. Other competent testimony showed that William E. Hackleman lived on the land in Indiana given him by his father until he died, and that after his death his widow and the appellees, his children, lived upon it until it was sold for their benefit. That the appellees and their mother enjoyed the proceeds of the sale of this land is not disputed by any of the testimony. Mrs. Rebecca Hackleman (mother of appellees) further testified that the appellant sold the land in Indiana so set apart to him by his father and went to Coles county, Illinois, and bought a farm, consisting of two eighty-acre tracts, with

the money received for the Indiana farm. This witness executed a quit-claim deed to the appellant, conveying to him all interest in the land without exacting any consideration for the same.

Louis Hackleman, son of the appellant, was about fifteen years old when his father removed from Indiana to Illinois. He testified he knew about his grandfather dividing up a portion of the land owned by him among his three children; that his father, the appellant, sold the land in Indiana so given him by his father and went to Illinois and bought the land in controversy; that when his father came back to Indiana he told his grandfather that he had bought the Illinois land in his (the grandfather's) name, and that his grandfather said he "ought have taken the deed in his own name." The witness further testified: "I heard grandfather and my father talk a good deal about the land. Grandfather told my father to go on the land in Illinois and live upon it, cultivate it and improve it, and the land should be my father's land. * * * I talked with my uncle, William Edward Hackleman, the year before I came out here. I heard my uncle and grandfather both say that my father had land out here; that it was his land."

Philip Heebe testified: "I knew them in Indiana. I knew about Michael Hackleman dividing out his land. John V. Hackleman lived on one piece, Mary J. Connor, with her husband, lived on another piece, and Edward Hackleman lived on another piece. This land originally belonged to Michael Hackleman. John V. Hackleman made improvements on the land that he owned in Indiana. He built a house on it. He sold the land he lived on. He used the money to pay for the piece of land that he bought out here in Coles county. This is the land in controversy."

Amanda Atchison, a daughter of the appellant, testified: "I remember hearing my grandfather say that he had given his three children farms. Their names were

Mary J. Connor, John V. Hackleman and William Edward Hackleman. I knew of father making improvements upon the land he was given in Indiana. I remember of his building a new house. * * * I remember of father selling the farm in Indiana. With the money he came to Illinois and bought here. I heard my grandfather speak of my father's farm. He always said 'John's farm.' He never claimed any of it. I heard him speak of this land in Illinois. He always called it, as he would say, John's farm."

Mrs. Connor survived until the year 1889. It was proven that Mrs. Connor was frequently at appellant's home, in Illinois, while he lived on the land in controversy, at times remaining for two or three weeks on a visit with his family. She loaned the appellant money, became his surety and accepted the Illinois land as security from him therefor. Appellant's daughter, Maude Faroute, and her husband, E. T. Faroute, lived with Mrs. Connor at her home in Indiana. Mr. Faroute was in her employ for a period of about fifteen years. He testified he had heard her talk about the division made by her father of portions of his land between herself, the father of the appellees and the appellant, and she said that appellant sold the portion set off to him and came to Illinois. She also told him that she had loaned appellant money and had a mortgage on his land in Illinois. This witness also knew the tract of land which the father of the appellees got from his father. He and his brother rented it, after the death of the father of the appellees, from their mother, and lived upon it for about two years.

There is no evidence in the record having any tendency to contradict the testimony which we have recited, with reference to the manner in which the said Michael Hackleman set apart to his three children portions of his land in Indiana, nor to dispute that Mrs. Connor and said William E. Hackleman, appellees' father, accepted and acquiesced in and were entirely satisfied with the man-

ner adopted by their father, during his lifetime, of dividing his property among his children. It is clear they each enjoyed the benefit of the land so set apart to them, respectively, and that they knew their brother, the appellant, sold the portion given him by their father and had invested the proceeds in the purchase of the lands in Illinois. That Mrs. Connor, from whom appellees claim to inherit a portion of the land in controversy, knew all the facts and regarded the appellant as the true and lawful owner of the land in Illinois is removed beyond the possibility of question by the testimony, and that the father of appellees acquiesced in the division made by his father of his lands and accepted the portion assigned to him was clearly proven. Louis Hackleman testified that he had heard Michael Hackleman and William E. Hackleman, father of the appellees, talk about the family affairs and heard them both say that the Illinois lands belonged to the appellant. Mrs. Rebecca Hackleman, mother of appellees, knew all of the material facts bearing upon appellant's right and title to the Illinois land, and executed a conveyance to him of all her apparent interest therein. The appellant lived upon the land in controversy for at least thirty-four years, claiming it as his own; built houses and barns upon it; reduced it to cultivation; drained and tiled it, and during all of that time his right was not only unquestioned by any one, but was fully acquiesced in and admitted by Mrs. Connor, (who survived her father for a period of twenty years,) by his brother, (the father of the appellees,) so long as he lived, and by the mother of the appellees during all of that period of time.

If the appellant, and Mrs. Connor and William E., the father of the appellees, had inherited from their father the title to the lands of appellant and to the lands in Indiana which their father set apart to said Mrs. Connor and said William E., and they had orally agreed upon the same division and partition of the lands that the evi-

dence in this record shows their father had made, and each of them had thereafter occupied the lands in severalty, in conformity with the parol partition, a court of equity would compel conveyance between them in accordance with the parol partition. (*Nichols* v. *Padfield,* 77 Ill. 253; *Gage* v. *Bissell,* 119 id. 298; *VanBuskirk* v. *VanBuskirk,* 148 id. 9.) The father, in his lifetime, by an arrangement in the nature of a family settlement, designated certain of his real estate as the separate property of each of his three children. The children acquiesced in the arrangement, and each of them entered into the actual possession of the lands so allotted to them, respectively. Their rights, after the death of the father, ought, in justice and fairness, to be the same as if they had inherited the lands in common, and afterwards made, by parol, the same allotment that their father made during his lifetime and in which they each acquiesced. We know of no equitable reason or rule why a decree should not be granted securing to the appellant the same relief that would have been given him had he and his brother and sister inherited the lands as co-tenants and made parol partition after the death of their father.

There is no force in the suggestion that the appellant cannot be heard to complain of the decree of the court or ask its reversal. The reason alleged is, that said Whipple holds the title to the land upon which the decree operates, and that he has not complained of any error in the decree and the appellant cannot complain for him. The appellant sold and conveyed the land to Whipple in October, 1900, prior to the filing of the petition of the appellees in April, 1901. There is unpaid to him $5000 of the purchase money of the land, upon which time was given, and the payment of this sum is secured by a mortgage on the lands. The decree awards Whipple but one-half of the west half of said south-east quarter of section 27, and if unreversed would deprive appellant of the lien created by the mortgage given by Whipple

on the other undivided one-half of the quarter section. In this respect the decree is prejudicial to him.

The decree dismissing the original and amended bills of the appellant and granting the prayer of the cross-bill filed by the appellees must be and is reversed, and the cause will be remanded, with directions to the circuit court to render a decree in accordance with the prayer of appellant's bill as amended.

*Reversed and remanded, with directions.*